## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2005-cr-40023-JPG |
| | ) | |
| HAL HICKS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on defendant Hal Hicks's motion for a change of venue and severance (Doc. 8), to which the government responded (Doc. 25) and Hicks replied.  (Doc. 41).  Although the government also filed a sur-reply brief in this case, the Court's local rules provide that "[u]nder no circumstances will sur-reply briefs be accepted," so that brief (Doc. 43) will be STRICKEN from the record and hasn't otherwise been considered here.  Having reviewed the relevant materials, the Court agrees with the government and finds that Hicks's motion should be DENIED.

Defendant Hal Hicks is no stranger to this Court.  It's perhaps unremarkable that he'd like as many of the charges in this case as possible moved to the Middle District of Florida, not because the Court is prejudiced against him–it's not and no reasonable observer could think otherwise–but it's just that he's yet to win a case here.  In any event, like the other civil actions we've become familiar with over the course of the past

-1-

three years (with which the Court assumes familiarity for present purposes), the indictment in this case revisits to some extent the misdeeds Hicks allegedly committed in connection with his role in the Illinois corporations of Midwest Transit, Inc., Midwest Transport, Inc., Mail-A-Way, Hal. D. Hicks Mail Transportation, etc., all of which exist(ed) to serve the U.S. Postal Service exclusively.  The indictment contains five counts, which we'll take chronologically.  Count 5 accuses Hicks of filing a false 1998 income tax return and is the main focus of this Order.  As the government explains in its opposition brief, the falsity stems from a $210,000 tax deduction Hicks took in 1998 for depreciation on a Raytheon King Air 350 aircraft.  Because Hicks didn't take delivery of the plane until early 1999, the argument goes, it was illegal to claim depreciation for it in 1998.  Count 4, by contrast, charges Hicks with falsifying a fuel use certification form submitted to the Postal Service in early 2003.  Note that unlike normal businesses–which we know charge for their goods or services based on what the market will bear regardless whether that price necessarily yields a profit or not (at least in the short run)–Postal Service contractors seem to be given their costs *plus* a specified profit margin.  Making money is guaranteed.  It follows that the contractor's expenses must also be reported; fuel use certification forms were the means used for such reporting in this case.  What's more, note that trucks are largely useless without fuel, which is therefore a major expense of such businesses.  Given that fuel is sold in any number of places, as an incentive to high-volume customers (like Hicks) fuel-selling outlets–like Pilot Corporation, Fabik Power Systems, Blue Beacon Enterprises, and Dixie

Management Group, in this case–offer rebates to their customers, though apparently not "instant rebates."  And there you have it.  What the government says happened in this case is that while Hicks charged the Postal Service with the full amount of the initial fuel purchase, he never accounted for the rebates he later received, i.e., he failed to issue credits reflecting the reduction in actual fuel expense.  Finally, counts 1, 2 and 3, for their parts, are much easier to conceptualize.  The accusation on this score is that Hicks received three checks, properly belonging to someone else and totaling just over $170,000, and cashed them in early 2004 to pay "his interior designer, plastic surgeon, brokerage accounts for kids, etc."  In other words, he's accused of just plain old stealing.

Based on what we've said thus far, an astute reader might say that a logical gap seems to exist between count 5, on the one hand, and counts 1 through 4, as a group, on the other.  While the latter arguably involve the diversion of revenue from one of the businesses, at some level at least, the crime alleged in count 5 seems purely individual, not to mention its temporal disparity with the others.  And so Hicks argues, positing, one, that 18 U.S.C. §3237(b) entitles him to severance of count 5 from the remainder of the counts alleged in this case, as a matter of right, and transfer of this count to the Middle District of Florida for trial; two, that FED. R. CRIM. P. 14 entitles him to severance of count 5 from the remainder of the other counts in any event.

Let's take point one first.  The Court notes that everyone in this case agrees that 18 U.S.C. §3237 applies here; the question is whether it's subsection (a) or (b) that controls.  Subsection (a) states the general rule: "[A]ny offense against the United States

begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.  Any offense involving the use of the mails . . . may be inquired of and prosecuted in any district from, through, or into which such . . . mail matter . . . moves."  Recall that filing a false tax return is the "offense" at issue in count 5, so under subsection (a) this prosecution could've been brought where the return was made; subscribed; filed; or where the preparer received information from Hicks, even though Hicks may have signed and filed the return elsewhere.  See *United States v. Marrinson*, 832 F.2d 1465, 1475 (7th Cir. 1987), and cases cited there.  See also *United States v. Ringer*, 300 F.3d 788, 791 (7th Cir. 2002).  We've yet to see the evidence in this case, of course, but at the very least it seems that Michael Burton received information in this district from Hicks that Burton used to prepare the 1998 return.  That's sufficient under *Marrison*.  We're therefore left with subsection (b), an exception to the general rule stated in subsection (a), which provides: "Notwithstanding subsection (a), where an offense is described in section [7206(1)] of the Internal Revenue Code of 1986 . . . [and] is based solely on a mailing to the Internal Revenue Service, and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed."  But the problem with applying subsection (b) in this case is that venue in this district isn't based "solely on a mailing," as the provision requires.  Most obviously,

there's no Internal Revenue Service center in this district at all to which Hicks could've mailed his tax return–even accidentally.  As the principal cases cited by the parties agree, subsection (b) is aimed at eliminating the burden placed on taxpayers prosecuted in distant judicial districts based "solely on the mailing" of their returns into those districts (recall, subsection (a) and cases like *Marrinson* would allow a southern Illinoisan to be prosecuted for the crime alleged in this case in the Western District of Missouri, for example, as the Kansas City, Missouri, service center is the one to which a southern Illinoisan mails his tax return and therefore the Western District of Missouri is one judicial district into which "such mail matter moves"), although such a prosecution involves significant inconvenience to the taxpayer, not to mention significant prejudice to his defense.  But that's not what we have in this case.  Hicks's tax preparer worked in this district, Hicks gave him tax information here.  And again, venue isn't grounded on the mere presence of an IRS service center in this district, a determinative fact in both *United States v. Humphreys*, 982 F.2d 254 (8th Cir. 1993), and *United States v. Melvan*, 676 F. Supp. 997 (C.D. Cal. 1987), two cases rejecting this type of challenge.  This also distinguishes *United States v. Nathanson*, 813 F. Supp. 1433 (E.D. Cal. 1993), from this case.  Venue there was "premised solely on his mailing his returns to Fresno, California," a city within the Eastern District of California.

So, too, with point two.  Granted, the case principally relied on by Hicks, *United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996), seems to suggest that joinder of count 5 with counts 1 through 4 in this case may be improper.  The notion is that neither the

-5-

income generated from the allegedly stolen rebate checks, nor the income realized from the failure-to-disclose, could've impacted a tax return filed five years earlier.  True enough.  But it's still early in the case, and FED. R. CRIM. P. 14 requires more than just improper joinder for severance to be necessary.  See *United States v. Lane*, 474 U.S. 438, 449 n. 12 (1986).  There must also be prejudice, which there is not at this point.  It's been this Court's experience that juries are well-equipped to separate good counts from bad, and this case seems to present nothing new that a limiting instruction can't handle.

For the foregoing reasons defendant Hal Hicks's motion for a change of venue and severance (Doc. 8) is **DENIED**.  The government's sur-reply (Doc. 43) is **STRICKEN**.


**IT IS SO ORDERED.**

**Dated: August 17, 2005.**

/s/ J. Phil Gilbert
**J. PHIL GILBERT**
**U.S. District Judge**